**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**SUSAN T.,[1]**

        **Plaintiff,**

                                      **Civil Action 3:22-cv-41**

  **v.**                              **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Susan T., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court for on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), the first administrative record (ECF No. 8), the supplemental administrative record (ECF No. 9),[2] and the second supplemental administrative record. (ECF No. 15). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] ECF No. 14 is a duplicate filing of the supplemental administrative record. *See* ECF No. 9.

1

## I.  BACKGROUND

Plaintiff protectively filed her application for benefits on August 14, 2017, alleging that she has been disabled since January 1, 2014, due to depression, hypothyroidism, shortness of breath, and arthritis in her right knee with hardware.  (R. at 223-29, 267.)  Plaintiff's application was denied initially in October 2017 and upon reconsideration in December 2017.  (R. at 62-69, 70-77.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 104-05.)  Administrative law judge Gregory G. Kenyon (the "ALJ") held a hearing on May 2, 2019, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 33-61.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On July 18, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 15; R. at 1052-1070.)   The Appeals Council granted Plaintiff's request for review, and remanded the matter for further proceedings. (R. at 78-85.)

On remand, the claim was again assigned to ALJ Kenyon.  After a telephone hearing held on December 14, 2020 (ECF No. 9; R. at 1029-1051), the ALJ concluded on January 27, 2021, that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.  (R. at 12-32.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  This matter is properly before this Court for review.

2

## II.    RELEVANT PROCEDURAL HISTORY AND RECORD EVIDENCE

### A.  Procedural History

As previously described, Plaintiff applied for disability benefits in 2017.  A hearing was held on May 2, 2019 before ALJ Kenyon who later denied Plaintiff's claim.  Plaintiff requested Appeals Council review of that decision and the Appeals Council granted the request.  While reviewing ALJ Kenyon's decision, the Appeals Council identified multiple items of reversible error.  (Tr. 104-06).  First, the Appeals Council noted that the ALJ did not adequately consider Plaintiff's obesity and hypothyroidism as impairments. *Id*. The Appeals Council further found a lack of support in the ALJ's mental health findings.  *Id*.  It was additionally found that the ALJ applied the wrong rules and regulations to the opinion evidence of record.[3]  *Id*.  Lastly, the Appeals Council noted that the ALJ applied an incorrect portion of the Medical Vocational Guidelines to the claim. Id.  In light of the errors they identified, the Appeals Council remanded Plaintiff's claim for further development and analysis. (Tr. 106-07).

ALJ Kenyon subsequently held a second hearing on December 14, 2020.  (Tr. 1094).  On January 27, 2021, the ALJ denied Plaintiff's claim for a second time.  The Appeals Council denied review.  This appeal followed.

### B.  Record Evidence

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

[Plaintiff] testified that she is 5'4" tall and weighs 247 pounds.

She testified that she has not had her thyroid removed. She testified that she stays extremely tired. She lays down 30% of the day. During the day, she may lay down

---

[3] A mistake he has made again.  *See infra*, § V at n.5.

3

3-4 hours. She testified that her thyroid is causing her eyes to go bad. Her vision is getting blurry, and she sees floaters.

[Plaintiff] testified that she has COPD, and experiences shortness of breath. She uses an inhaler. She testified that this occurs 5-6 times per day. [Plaintiff] testified that she is a smoker. She smokes about one pack of cigarettes per day.

[Plaintiff] testified that she experiences severe anxiety. She has trouble concentrating.

(R. at 18.)

### B.     Relevant Medical Records

The ALJ summarized the relevant medical records as to Plaintiff's physical impairments

as follows:

The record reflects that [Plaintiff] has two prior right knee surgeries. One was an arthroscopic procedure performed in 1999, and the other was a right knee repair following a motor vehicle accident in 2009. On February 26, 2009, [Plaintiff] was an unrestrained driver who collided with a parked car. She fractured her right patella. [Plaintiff] underwent surgical repair of the right knee, and participated in, and performed well with post-surgical physical and occupational therapy. Treatment notes indicate that [Plaintiff] experienced some mild discomfort with the right knee. However, pre-operative pain is markedly improved. [Plaintiff] has full active motion of the knee, and exhibits no instability. Even recently, [Plaintiff] is noted as only having mild pain and tenderness in the right knee. [Plaintiff] returned to work following her surgery.

[Plaintiff]'s height of 64 inches and weight of 247 pounds correspond to a body mass index (BMI) of "42.4," which is indicative of morbid obesity. Obesity may cause limitation of function (Social Security Ruling 19-2p). The record reflects that [Plaintiff] has been in the morbidly obese range during the period in question.***

The record reflects some history of hypothyroidism due to benign neoplasm of the thyroid gland. During the hearing, [Plaintiff] testified that she has fatigue. However, she also testified that she has not had her thyroid removed. [Plaintiff] has some osteopenia, but there is no indication that this resulted in any fractures or other injuries prior to the date last insured. [Plaintiff] also has some element of mild COPD causing shortness of breath on exertion. This has been treated with an inhaler. ***

4

(R. at 19-20 (internal citations omitted).)

The ALJ summarized the relevant medical records as to Plaintiff's mental health impairments as follows:

> The record reflects that [Plaintiff] experienced some depression following her accident. [Plaintiff] has diagnoses for depressive disorder and alcohol abuse, and she has a history of alcohol abuse as noted above. However, it is noted that [Plaintiff] is in sustained remission for alcohol abuse. Further, her depression has been noted to be stable, and she is doing better with Prozac. Her depression does not interfere with her activities of daily living, things she wants to do, or pleasurable activities. She is able to maintain relationships.

(R. at 20 (internal citations omitted).)

The ALJ discussed the relevant medical opinions as follows:

> Two psychologists, Robyn Murry-Hoffman, Ph.D., and Karla Delcour, Ph.D., examined the evidence of record, and assessed [Plaintiff]'s psychological functioning at the behest of the state agency. Dr. Murry-Hoffman and Dr. Delcour were of the opinion that there was insufficient evidence to assess [Plaintiff]'s impairments and render a residual functional capacity. The undersigned finds the opinions of Dr. Murry-Hoffman and Dr. Delcour to be unpersuasive. The record, for the relevant period between January 1, 2014 to December 31, 2016, does not providing [sic] a plethora of information regarding [Plaintiff]'s mental health, as far as diagnoses for depression and alcohol abuse, and treatment, but there is enough there to evaluate this claim.

(R. at 20 (internal citations omitted).)

> Two physicians, Leon D. Hughes, M.D., and Mehr Siddiqui, M.D., reviewed the evidence of record and assessed [Plaintiff]'s physical functioning at the behest of the state agency. Dr. Hughes and Dr. Siddiqui were of the opinion that there was insufficient evidence to assess [Plaintiff]'s impairments and render a residual functional capacity. The undersigned finds the opinions of Dr. Hughes and Dr. Siddiqui to be unpersuasive. The record, while not providing a plethora of information regarding [Plaintiff]'s physical health, clearly shows evidence of the right knee fracture, its repair, and treatment.

(R. at 22 (internal citations omitted).)

## III.    ADMINISTRATIVE DECISION

On January 27, 2021, the ALJ issued his decision.  (R. at 12-33.)  The ALJ found that

Plaintiff last met the insured status requirements of the Social Security Act on December 31,

2016.  (R. at 19.)  Then, at step one of the sequential evaluation process,[4] the ALJ found that

Plaintiff did not engage in substantial gainful activity during the period from her alleged onset

date of January 1, 2014 through her date last insured of December 31, 2016.  (*Id.*)  The ALJ

found that, through the date last insured, Plaintiff had the following severe impairments:

residuals of a remote prior right knee fracture; hypothyroidism; mild Chronic Obstructive

Pulmonary Disease (COPD); and osteopenia.[5]  (*Id.*)  The ALJ further found that, through the date

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[5] The ALJ subsequently determined that Plaintiff's morbid obesity was a severe impairment, although it is not clear how this impairment was accounted for in the RFC.  (R. at 20.)

6

last insured, Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (R. at 21.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that, through the
> date last insured, [Plaintiff] had the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) subject to the following limitations: (1)
> frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs
> (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as
> unprotected heights or dangerous machinery; and (4) no concentrated exposure to
> temperature extremes or respiratory irritants.

 (R. at 22.)

Relying on the VE's testimony, the ALJ concluded at step four of the sequential process,

that, through the date last insured, Plaintiff was capable of performing her past relevant work as

an insurance salesperson, as this work did not require the performance of work-related activities

precluded by Plaintiff's RFC.  (R. at 25.)  He therefore concluded that Plaintiff has not been

under a disabled at any time from January 1, 2014, the alleged onset date, through December 31,

2016, the date last insured.  (R. at 25.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of

a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

In her Statement of Errors, Plaintiff sets forth several interrelated contentions of error: (1) the ALJ's hypotheticals to the vocational experts were incomplete and deficient; (2) the ALJ failed to meet his burden to develop the record; (3) the ALJ's findings lack a reasonable foundation because no medical evidence supports the ALJ's RFC; and (4) the ALJ failed to adequately and sustainably account for Plaintiff's mental impairments and wholly omitted them from his RFC finding.

The Commissioner counters that the ALJ analyzed the pertinent evidence and reasonably concluded that through the date last insured, Plaintiff could perform a limited range of light work and therefore, was not disabled.  The Commissioner also contends that Plaintiff has not identified any medical opinions where a medical source indicated that she had greater limitations than noted in the ALJ's RFC finding.  (ECF No. 19 at PageID 1156-68).

To begin, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id*.  The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior

---

[6] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).   Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

"Medical opinion" and "prior administrative medical finding" are defined as follows:

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

* * *

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and

10

psychological consultants at a prior level of review (see § 416.1400) in your current
claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically
equals any listing in the Listing of Impairments in Part 404, Subpart P,
Appendix 1; . . . .

(v) . . . your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug
addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate

medical opinions and prior administrative medical findings for claims filed on or after March 27,

2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will

not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from your medical

sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical

source opinions and prior administrative findings using five factors: supportability, consistency,

relationship of source to claimant, specialization, and other factors tending to support or

contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §

404.1520c(c)(1)–(5).

11

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

12

administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor

"concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis,

and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021

WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July

2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)). [7]

The Court agrees with Plaintiff that the ALJ failed to meet his burden to develop the

record and that his findings lack a reasonable foundation because no medical evidence supports

the ALJ's RFC.[8]   It is well-settled that the plaintiff bears the ultimate burden of proof as to the

existence and severity of the limitations caused by her impairments.  *Cruse v. Comm'r of Soc. Sec.*,

502 F.3d 532, 545 (6th Cir. 2007).  It is equally well-settled that the ALJ bears the burden of fully

and fairly developing the administrative record upon which his or her decision ultimately rests.

*Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  This Court has held that, although there is no

"bright line test" for determining when an ALJ has fallen short of meeting this burden, remand is

---

[7] Although Plaintiff did not raise the issue, the Court notes that the ALJ utterly failed to perform an analysis of the medical opinions using this framework, which would justify remand standing alone.

[8] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error.  Thus, the Court need not, and does not, resolve the alternative bases Plaintiff asserts support reversal and remand.  Nevertheless, on remand, the ALJ may consider them.

appropriate where the "ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Jones v. Commissioner*, Case No. 3:21-cv-25 at *5 (S.D. Ohio June 23, 2022) (quoting *Kizys v. Comm'r of Soc. Sec.,* No. 3:10-cv-25, 2011 WL 5024866, at *1-3 (N.D. Ohio Oct. 21, 2011)). The ALJ's obligation to develop the record may be satisfied, without obtaining additional evidence, if the evidence involves "relatively little physical impairment" such that the ALJ can render "a commonsense judgement about functional capacity." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). This exception, however, applies only in a "limited" number of cases "when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a current medical source." *Harris v. Comm'r of Soc. Sec.*, No. 15-10966, 2016 WL 8114128, at *10 (E.D. Mich. Mar. 2, 2016), *report and recommendation adopted sub nom.*, No. 15-CV-10966, 2016 WL 2848422 (E.D. Mich. May 16, 2016) (citations omitted).

Relatedly, when considering the medical evidence and calculating the RFC, ""an ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08BCVB00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

Here, all of the state agency consultants who reviewed Plaintiff's records in 2017 found there was insufficient evidence available at that time upon which to form an opinion. Undeterred, the ALJ found these opinions to be unpersuasive, without the necessary and proper

analysis, and even noted there was not a "plethora of information" regarding either Plaintiff's

mental or physical health.  (R. at 20, 22.)  The ALJ failed in his obligation to develop a complete

record by utilizing the tools provided in the regulations for ordering additional opinion evidence,

such as "recontact[ing] the treating source, order[ing] a consultative examination, or hav[ing] a

medical expert testify at the hearing." *Deskin*, 605 F. Supp. 2d 908 at 912.   Instead, he substituted

his own judgment.  No medical opinions support the ALJ's findings regarding Plaintiff's

impairments, their symptoms or their functional limitations.  Moreover, this is not one of the limited

cases where the impairments and restrictions are so minimal that the ALJ could have made a

"commonsense judgment" about Plaintiff's capabilities with the assistance of a medical opinion.  See

*Deskin*, 605 F. Supp. at 912.  Here, the record reflects the residuals of a prior fracture with two

subsequent surgeries involving a weightbearing joint in a morbidly obese woman who also suffers

from COPD and hypothyroidism.  Further, Plaintiff has been diagnosed with psychiatric

impairments, been subjected to psychometric testing, and has endorsed symptoms related to her

mental health as to which no medical source has meaningfully opined.

In this case, there is no medical opinion evidence whatsoever that might even partially

support the ALJ's RFC assessment.  Further, in light of the significant and complex overlapping of

her multiple impairments, the ALJ's erred in substituting his own lay judgement on matters that

should have been addressed by a medical opinion.  This was error.

## VI. CONCLUSION

Due to the errors outlined above, the decision of the Commissioner is therefore

**REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of

42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter

**FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).          s

        **IT IS SO ORDERED.**


**Date:**   <u>March 23, 2023</u>          <u>/s/ *Elizabeth A. Preston Deavers*</u>
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **UNITED STATES MAGISTRATE JUDGE**

16